RAILWAY EMPLOYEES' CO-OP. ASS'N et al. v. ATLANTA B. & C. R. CO. et al.
No. 840.

District Court, D. Georgia.
Jan. 6, 1938.

J. C. Savage and Bond Almand, both of Atlanta, Ga., and Frank A. Wilkinson, of Birmingham, Ala., for complainants.

Brandon, Hynds & Tindall, of Atlanta, Ga., for defendant.

UNDERWOOD, District Judge.

This cause came on to be heard upon complainants' motion for an interlocutory injunction, and, after the introduction of evidence, was argued by counsel; and

thereupon, upon consideration thereof, the court makes the following findings:

### Findings of Fact.

1. The Railway Employees' Co-operative Association of Georgia, hereinafter called the "Co-operative Association," is a lawfully incorporated labor organization, and Scott White is the general chairman of the Engineers' Committee of said Co-operative Association and was authorized to handle all matters with the management of defendant referred to him by said committee and to represent said committee and the engineer members of said Co-operative Association in the negotiation and execution of the working agreements between said association and the management of defendant hereinafter referred to.

2. C. E. Brower, general superintendent, and A. W. Kirkland, superintendent of motive power, were the duly authorized officers of defendant, who negotiated and executed the said hereinafter mentioned agreements with the Co-operative Association.

3. The General Committee of Adjustment of the Co-operative Association, composed of the general chairmen of all committees of crafts represented by the Co-operative Association, was authorized to negotiate and did negotiate and execute two working agreements with defendant, the first executed on April 2, 1934, and the second on September 30, 1935. The latter agreement superseded the first and was observed by the parties until November 1, 1937. Defendant, after recognizing the "Engineers Organization of the Atlanta Birmingham & Coast Railroad Company," hereinafter called "Engineers Organization," entered into an agreement with it, effective as of November 1, 1937, covering the same matters as the agreement with the Co-operative Association, which the defendant undertook, without the Co-operative Association's consent, to abrogate.

4. The agreement of September 30, 1935, included schedules of wages, rules, and regulations for engineers and certain other employees of defendant, and provided that: "This agreement shall become effective as of September 1st, 1935. Either party desiring to cancel same, or any part thereof, shall give the other party thirty days written notice." This notice was not given.

5. The Co-operative Association complained to defendant that the Engineers Organization was not a bona fide organization but a company union and maintained that defendant should deal only with the Co-operative Association.

6. Defendant replied on September 18, 1937, that a vote of the employees involved, which vote it had checked, showed that a majority favored representation by the Engineers Organization, and that it would recognize that organization. Thereupon, on September 19, 1937, the Co-operative Association notified defendant that it was invoking the jurisdiction of the Mediation Board under section 2 (ninth) of the Railway Labor Act, as amended by Act June 21, 1934, § 2, 45 U.S.C.A. § 152(9), to investigate the dispute and certify the organization which was authorized and designated to represent the employees involved in the dispute. Such jurisdiction of the Mediation Board was formally invoked on September 27, 1937, and the board duly accepted jurisdiction of the dispute, notifying complainants and defendant of same.

7. Prior to defendant's letter of September 18, 1937, advising complainants of its recognition of the Engineers Organization, defendant had considered complainants' protest of the manner in which engineers' signatures to the petition requesting recognition of the Engineers Organization were obtained, and defendant thereupon sent sealed letters direct to the engineers asking confirmation of their signatures. These confirmations showed thirty-nine actual signers of the petition, out of a total of seventy-six eligible to vote. Subsequently, between October 15th and the end of the month, upon a poll of the engineers by the Co-operative Association, fifty-three engineers out of seventy-six eligible to vote, seventeen of whom had signed the Engineers Organization petition, signed written certificates of their designation of the Co-operative Association as their representative.

8. The evidence shows that certain individuals employed by defendant took considerable interest in the organization of the Engineers Organization, but of them only two were shown to have been executive officers of defendant, to wit: A. W. Kirkland, superintendent of motive power, and C. E. Perry, master mechanic. The others were not executive officers of defendant and were not authorized by defendant or any of its executive officers to take any part in the organization of said group. There was no evidence of any such

action on the part of General Superintendent Brower or President Bugg, or any executive other than Kirkland and Perry, nor of any contribution or other financial aid given to the Engineers Organization by defendant or any of its executive officers, but on the contrary the employees circulating the petition seeking recognition of the Engineers Organization among the engineers did so on their own time and received no pay therefor from defendant. There was evidence tending to show that Kirkland and Perry spoke to certain engineers about the petition and advised them to sign it and get in line with the new organization and go along with the old and conservative employees, but a finding as to these alleged acts of Kirkland and Perry is deemed unnecessary at this time. There is no evidence of any threats by defendant or its officers to influence or coerce in the future any of the engineers in the exercise of their right to select the representative of their own free choice or to interfere in any way with the handling of the dispute by the Mediation Board, and I find that there is not sufficient evidence in the present record to show an existing or imminent danger that defendant will be guilty of such conduct.

9. Defendant abrogated the agreement of September 30, 1935, with the Co-operative Association, and entered into a new agreement with the Engineers Organization, changing the rates of pay, rules, and working conditions without giving the Co-operative Association the thirty days' notice required by said agreement or the thirty days' written notice of an intended change in such agreement as required by section 6 of the Railway Labor Act, as amended by Act June 21, 1934, § 6, 45 U.S.C.A. § 156. The new agreement with the Engineers Organization was entered into on October 20, 1937, after defendant had been advised on September 18, 1937, of the submission to the Mediation Board of the dispute as to representation.

## Conclusions of Law.

Complainants ask for a temporary injunction, first, restraining defendant from interfering with the employees involved in the selection of a representative, and, second, enjoining defendant from giving effect to the agreement of October 20, 1937, between defendant and the Engineers Organization, and from disregarding the agreement of September 30, 1935, between defendant and the Co-operative Association, and praying further that defendant be required to continue said agreement with the Co-operative Association in force until it be terminated in accordance with its terms or with the provisions of the Railway Labor Act, as amended, 48 Stat. 1185, 45 U.S.C.A. § 151 et seq.

This act provides that, "Employees shall have the right to organize and bargain collectively through representatives of their own choosing," and that, "No carrier, its officers or agents, shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its employees, or to use the funds of the carrier in maintaining or assisting or contributing to any labor organization, labor representative, or other agency of collective bargaining, or in performing any work therefor, or to influence or coerce employees in an effort to induce them to join or remain or not to join or remain members of any labor organization." Section 2 (fourth), as amended, 45 U.S.C.A. § 152(4).

The above provisions are not only safeguards of vital public interest, but also create a property right in the employees of great value, the interference with which may be enjoined by a court of equity. Neither the Clayton Act, § 20, 29 U.S.C.A. § 52, nor the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq., is applicable. Virginian Ry. Co. v. System Federation, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789.

Evidence was introduced tending to show interference on the part of certain officers and agents of defendant with the right of complainants to select representatives of their own choosing by encouraging the organization of the Engineers Organization and the influencing and coercing members of the Co-operative Association to withdraw from it and join the Engineers Organization. These alleged acts involve past transactions, for the commission of which punishment is provided for in the Railway Labor Act. These alleged acts are only relevant to be considered, with the other evidence in the case, to determine whether or not there is sufficient probability that similar acts will be committed by defendant or its agents in the future to influence the vote of the employees in any election that the Mediation Board may call to determine the lawful representative of said employees, or to interfere with any

other measures that the Mediation Board may take in its handling of the dispute. The Mediation Board is given jurisdiction to determine and designate the lawful representative and to provide measures which will insure a fair, free, and uninfluenced expression of the employees' choice of such representatives. The court will not presume that these measures will be insufficient and ineffective, nor that defendant and its officers will be guilty of criminal acts, unless some future acts of the defendant, or its agents, so indicate.

█ I therefore conclude that there is no such imminent danger of violation of complainants' rights in this respect as would make the issuance of the injunction prayed for proper at this time, but this ruling is made with the reservation that if, at any time, it appears that any such influence or interference is threatened or imminent and beyond the protection of the Mediation Board, then a further, application to this court for such injunction will be entertained. I think that the court should abstain from any possible interference with the jurisdiction of the Mediation Board, unless it should become absolutely necessary to protect complainants' rights, and that the court should not complicate the exercise of the jurisdiction of the Mediation Board by any ruling that might be in the nature of prejudging issues which should properly be passed upon, certainly in the first instance, by the Mediation Board.

█ The second prayer for an injunction, which is for an order of this court requiring defendant to maintain and keep in force the agreement reached between defendant and the Co-operative Association on September 30, 1935, and the rates of pay, rules, and working conditions in force at the time the services of the Mediation Board were requested by the Co-operative Association, until the Mediation Board has acted upon the dispute as to representation, should, I think, be granted. Railway Labor Act § 6, as amended by Act June 21, 1934, § 6, 45 U.S.C.A. § 156.

Section 2 (ninth), of the Railway Labor Act, provides for the certification by the Mediation Board to the carrier of the representative of the employees authorized to act for them, where a dispute as to same has been submitted to it, as in this case, and the carrier is then required to treat with the representative so designated. After the submission of the dispute the carrier must await the finding of the Mediation Board, and cannot treat with any other representative of the employees than the one designated by the Mediation Board. Matters must rest in statu quo until such action, and as provided in section 6 of said act, rates of pay, rules, and working conditions cannot be altered by the carrier until the controversy has been finally acted upon by the Mediation Board. Furthermore, the carrier and representatives of the employees must give at least thirty days' written notice of any intended change in rates of pay, rules, and working conditions. Representatives of employees means such representatives as have been designated by the Mediation Board, where its services have been requested in a dispute concerning such representation.

To hold otherwise would expose employees, for an indefinite time, to the danger of hurtful changes in their rates of pay, rules, and working conditions, by the device of a fictitious dispute between a real and a dummy organization. The act was intended to safeguard against this danger and its provisions are sufficient to prevent the thwarting of such purpose. The act, section 6, expressly stated that "rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon" by the Mediation Board.

█ "A definite statutory prohibition of conduct which would thwart the declared purpose of the legislation cannot be disregarded." Texas & N. O. R. Co. v. Railway Clerks, 281 U.S. 548, 568, 50 S.Ct. 427, 433, 74 L.Ed. 1034.

█ The protection to employees thus provided is a highly valuable property right and the obligation imposed upon the carrier by the act is an affirmative one that can be enforced by a court of equity by a mandatory injunction, if necessary. Texas & N. O. R. Co. v. Railway Clerks, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034. Neither the Clayton Act nor the Norris-LaGuardia Act has application in this case. Virginian Ry. Co. v. System Federation, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789.

█ Defendant was exceedingly prompt in recognizing the Engineers Organization as the representative of the employees involved, and without delay, and without awaiting the decision of the Mediation Board, which had then, with the knowledge of defendant, assumed jurisdiction over the dispute, negotiated and executed

the new agreement with the Engineers Organization, attempting thus to abrogate the agreement with the Co-operative Association without giving the thirty days' notice required by it, or the thirty days' written notice required to be given by section 6 of the Railway Labor Act.

Whereupon it is ordered, adjudged, and decreed that defendant and its officers and agents be and hereby are, until the further order of this court, temporarily enjoined from disregarding and are required to recognize and continue in force the agreement with the Co-operative Association dated September 30, 1935; and are further temporarily enjoined from altering the rates of pay, rules, or working conditions, in effect when the Mediation Board assumed jurisdiction of the dispute as to representation, until said board has designated what organization is the true representative of said employees involved or until the further order of this court.