## BURKE v. MORPHY et al.
### No. 197.

Circuit Court of Appeals, Second Circuit.
Feb. 13, 1940.

574

William R. McFeeters, of St. Albans, Vt., and C. E. Weisell and Harold C. Heiss, both of Cleveland, Ohio, for appellant.

Edwin W. Lawrence, of Rutland, Vt., for appellee Luis G. Morphy, receiver of Rutland R. Co.

Larkin, Rathbone & Perry, of New York City (Hersey Egginton, George D. Mumford, and Charles D. Peet, all of New York City, of counsel), for appellee Central Hanover Bank & Trust Co.

Stewart & Shearer, of New York City (George L. Shearer and Francis R. Curry, both of New York City, of counsel), for appellee United States Trust Co. of New York.

Christopher A. Webber, of Rutland, Vt., and Herrick, Smith, Donald & Farley, of Boston, Mass. (Robert Cutler and James F. Preston, Jr., both of Boston, Mass., of counsel), for appellee Old Colony Trust Co.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Rutland Railroad Company is in receivership under a creditor's bill filed in the District Court for the District of Vermont. The receiver has been hard pressed to meet even his operating expenses. For lack of cash, the district judge, on July 12, 1938, ordered the receiver to pay employees only 85 per cent. of their wages after that date, and the employees were granted a first lien on the property for the remainder due them. The 15 per cent. withheld under this order on wages accruing between July 12 and August 4 has since been paid, and is not the subject of the present action. But as the receiver's plight became even more desperate, the receivership court issued another order, dated July 30, 1938, which instructed the receiver to notify all employees that after August 4, the receiver would continue to withhold 15 per cent. of their pay, the amounts withheld to constitute only general claims against the receivership. This order purported to declare that the employees would surrender their claim to a first lien by continuing in the service of the receiver after August 4. The receiver has obeyed this order, and 15 per cent. of the wages accruing since August 4, 1938, has never been paid. To force payment of these moneys, Burke, an employee of the railroad, brought a class action, on behalf of himself and the other employees, against the receiver and in the receivership court, praying an injunction and an accounting. The District Court denied the relief requested, and Burke has appealed.

■■ Before we turn to the merits of the controversy, we are met with the contention that the order of July 30, 1938, pursuant to which the wage payments have been withheld, was an order binding the employees. Since they never appealed, the order is now claimed to be res judicata. We cannot agree. The employees never intervened as parties to this receivership. They were not creditors of the railroad; at most they were creditors of the receiver. Though we assume their privilege to seek intervention, they were under no obligation to exercise it, and the existence of the privilege is not equivalent to actual intervention. Unless they exercised their privilege, they remained strangers to the litigation. Gratiot County State Bank v. Johnson, 249 U.S. 246, 39 S.Ct. 263, 63 L.Ed. 587. The employees could have been cited into the main proceedings by an order to show cause why the order of July 30, 1938, should not be issued, but no such steps were ever taken.

Moreover, the order was hardly the sort that could be made res judicata. Issued ex parte, it simply instructed the receiver to take certain steps. Its chief purpose was to protect the receiver from personal liability for his subsequent action, not to adjudicate rights and duties among contesting litigants. The district judge did hold extensive hearings before signing the order, but these hearings were not solemn judicial events. They were town meetings to which were invited the entire population of the region, and at which were discussed all sorts of schemes to save the railroad. Some. of the hearings were even held in New York communities beyond the horizon of the district judge for the District of Vermont. The employees showed up at some of these get-togethers, but whatever appearances they had made, they were permitted to withdraw by express order of the court.

■ Even if the order of July 30, 1938, were res judicata, the present action is far from a collateral attack. It is brought in the receivership court before the same district judge. Whatever the solemnity and binding effect of the order, it would have been proper for the employees to file a motion to vacate it. If we thought it necessary, we could regard the present action

as such a motion to vacate, for it serves the same purpose and achieves the same result.

On the merits, we cannot find any legal justification for the order. The order did affect wages and was in substance a wage cut; no wage cut may be imposed unless the provisions of the Railway Labor Act, 45 U.S.C.A. § 151 et seq., are first obeyed; and no attempt was made to comply with this Act. The Railway Labor Act (48 Stat. 1185, 45 U.S.C.A. § 151) applies to every interstate carrier, including a carrier that is being operated by a receiver. The Act forbids any intended change in an agreement affecting rates of pay unless thirty days' notice is given to the other party to the agreement. Either party may call in the National Mediation Board, or the Board itself may proffer its services. Rates of pay may not be altered by the carrier until the Board has concluded its duties. 45 U.S.C.A. §§ 151–156; Railway Employees' Co-op. Ass'n v. Atlanta, B. & C. R. Co., D.C.Ga., 22 F.Supp. 510.

Not even a colorable attempt to comply with these statutory requirements was made by the receiver. The only excuse now offered is that the statute was inapplicable, since rates of pay were not affected by the order. But the order instructed the receiver to withhold 15 per cent. of all wages, and limited the employees to a general claim for the balance against the assets of the road, subordinate to the bondholders and administrative creditors. A contention that this order did not even "affect" existing agreements between the carrier and the various brotherhoods is frivolous. Equally unimpressive is the argument that the Railway Labor Act is unconstitutional when applied to carriers in financial distress. See Virginian Ry. Co. v. System Federation No. 40, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789; Texas Electric Ry. Co. v. Eastus, D.C.N.D.Tex., 25 F.Supp. 825, 833, 834, affirmed 60 S.Ct. 134, 84 L.Ed. ——; Birmingham T. & S. Co. v. Atlanta, B. & A. Ry. Co., D.C.N.D. Ga., 271 F. 731. Fort Smith & W. R. Co. v. Mills, 253 U.S. 206, 40 S.Ct. 526, 64 L.Ed. 862, contains nothing to the contrary.

The present statute applies expressly to receivers, while the Adamson Act (45 U.S. C.A. §§ 65, 66), construed in the Fort Smith case, did not. A statute requiring all railway wage disputes to pass through a brief period of attempted mediation seems reasonably calculated to prevent the cessation of interstate transportation. The danger of stoppages caused by wage disputes is just as great when a railroad is insolvent as when it is solvent. A receiver has no special liberty of contract. "And, if the receiver cannot continue to carry on the Company's business according to the plain direction of Congress, he must pursue some other course permitted by law." Gillis v. California, 293 U.S. 62, 66, 55 S.Ct. 4, 5, 79 L.Ed. 199.[1]

The order of July 30, 1938, was erroneous for still another reason. A receiver appointed by a federal court must manage and operate the property according to the requirements of the valid laws of the state. 28 U.S.C.A. § 124; Gillis v. California, supra. A valid law of the state of Vermont requires railroads to pay wages weekly, and in lawful money. No employee shall be required as a condition of employment to accept wages at any other periods. Vt. Pub.Laws, §§ 6614, 6616. Valid laws of the state of New York provide similarly. N.Y.Labor Law (Consol.Laws, c. 31) § 195. State statutes of this type are applicable to interstate railroads. Lake Shore & M. S. Ry. Co. v. Ohio, 173 U.S. 285, 19 S.Ct. 465, 43 L.Ed. 702; Gulf, C. & S. F. Ry. Co. v. Texas, 246 U.S. 58, 38 S.Ct. 236, 62 L.Ed. 574. The order of July 30 was a violation of both these statutes.

The invalidity of the order of July 30, 1938, renders invalid the action of the receiver under that order. The supposed contracts entered into between the receiver and the employees were unenforceable for failure to comply with all the federal and state laws referred to above. Claims for the wages withheld, like other claims for receivership expenses, have precedence over the mortgage bonds of the railroad, Union Trust Co. v. Illinois Midland Ry. Co., 117 U.S. 434, 464, 481, 6 S.Ct. 809, 29 L.Ed. 963, and should be paid accordingly.

---

[1] The Act in its express inclusion of receivers represents a definite turning away from the earlier and much criticized attempts of receivership judges to force operation of financially distressed railroads through use of the contempt process against the employees. Nelles, A Strike and Its Legal Consequences— An Examination of the Receivership Precedent for the Labor Injunction, 40 Yale L.J. 507; Witmer, Collective Labor Agreements in the Courts, 48 Yale L.J. 195, 223, 224; 33 Col.L.Rev. 882.

The decision of the District Court is reversed and the cause is remanded, with instructions to grant to plaintiff the relief requested.