GRAND INTERNATIONAL BROTHERHOOD OF LOCOMOTIVE ENGINEERS et al. v. MORPHY et al.

No. 198.

Circuit Court of Appeals, Second Circuit.

Feb. 13, 1940.

William R. McFeeters, of St. Albans, Vt., and Harold C. Heiss and C. E. Weisell, both of Cleveland, Ohio, for appellants Grand International Brotherhood of Locomotive Engineers and others.

Larkin, Rathbone & Perry, of New York City (Hersey Egginton, Parker Newhall,

and Charles Peet, all of New York City, of counsel), for appellant Central Hanover Bank & Trust Co.

Stewart & Shearer, of New York City (George L. Shearer and Francis R. Curry, both of New York City, of counsel), for appellant United States Trust Co. of New York.

Christopher A. Webber, of Rutland, Vt., and Herrick, Smith, Donald & Farley, of Boston, Mass. (Christopher A. Webber, of Rutland, Vt., and Robert Cutler and James F. Preston, Jr., both of Boston, Mass., of counsel), for appellant Old Colony Trust Co.

Edwin W. Lawrence, of Rutland, Vt., for appellees.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This case is the aftermath of Burke v. Morphy, 109 F.2d 572, decided this day. After the employees had filed their action to recover the payments withheld under the order of July 30, 1938, which we have just held erroneous, and before this action had been heard or decided by the receivership court, the receiver served a new notice on the representatives of the employees that wages would be reduced 15 per cent. The notice was served on December 9, 1938, and the pay cut was to become effective on January 12, 1939, more than thirty days thereafter, as the Railway Labor Act requires. After several conferences the employees refused to accept the proposed reduction, and both the employees and the receiver invoked the services of the National Mediation Board. Pursuant to its statutory duty (45 U.S.C.A. § 155) the Board endeavored to bring the disputants together. The employees were unwilling to discuss the proposed pay cut until they had been refunded the amounts withheld under the orders of July 12 and July 30, 1938, described in the earlier case. On March 31, 1939, the District Court ordered the receiver to pay out the moneys withheld under the order of July 12, 1938. The sums withheld under the order of July 30, 1938, were, however, never repaid. At the time when the order of March 31, 1939, was entered, Burke v. Morphy, involving the validity of the order of July 30, 1938, still had not been heard or decided.

Under § 5 of the Railway Labor Act, 45 U.S.C.A. § 155, the carrier could not impose the contemplated wage cut until thirty days after the Board had notified the parties that its mediatory efforts had failed. By the end of March, 1939, negotiations of one sort or another had been pending for four months, and the receiver requested the National Mediation Board to conclude its efforts at mediation. The Board responded by addressing to the receiver and to the employee representatives a letter, dated April 7, 1939, summarizing the positions of the disputants, and then continuing as follows:

"These positions of the parties make it clear that two wage changes or deductions are in dispute between the carrier and the employees. One is now in effect, having been made by direction of the court July 30, 1938, and the other is a request of the receiver, dated December 9, 1938, for a wage change or reduction to become effective January 12, 1939. The legality of the first has been challenged by the employees in a suit that is now in court, and both the carrier and the employees have requested the Board to mediate the second. * * *

"Since the carrier refuses to restore the deductions from wages that it has been making since August 4, 1938, and the employees say they cannot negotiate any other changes or reductions until the withheld wages are restored, mediation between the parties as provided by the Railway Labor Act cannot proceed until the legality of the wage deductions and the disallowance of the liens for wages has been determined.

"The National Mediation Board has no authority to adjudicate the conflicting claims of legal and property rights that are here involved. However, with the interests of the parties, their requests for the Board's services, and the intent of the law in mind, the Board authorized Mr. Cook, with the consent of the parties, to make every effort to get them to agree to create a condition or situation where mediation of the carrier's request of December 9, 1938, would be possible.

"The Board's duties in the case are limited to bringing the parties to agreement by mediation, and when it finds its best efforts unsuccessful it must endeavor to induce the parties to arbitrate. The Board finds, however, that neither mediation nor arbitration as provided by the Railway Labor Act is possible until the legal and property rights of the parties are determined in the suit now pending in court.

"In accordance with its usual practice when mediation disputes involve questions that are in litigation before the courts, the Board will therefore suspend mediation in the present case until such time as the legal and property rights of the parties that are in question in the pending suit are determined by the courts. Board Member Cook will hold himself in readiness to resume mediation as soon as the pending suit is decided or settled by the parties themselves out of court."

On June 2, 1939, more than thirty days after the above letter was mailed, the receiver petitioned the court for an order reducing wages 15 per cent. in accordance with the notice originally sent out on December 9, 1938. The employees were cited in to answer the petition by an order to show cause. On June 17, 1939, the District Court ordered the receiver to impose the 15 per cent. pay cut. From this order, the employees appeal. The three trust company intervenors also appeal, because the District Court failed to make a finding that the Board's letter of April 7, 1939, operated as the notice of its failure to mediate required by § 5 of the Railway Labor Act.

All of the questions on this appeal revolve around the meaning of the letter of April 7. And whatever the meaning of that letter, we are satisfied that the order now appealed from was improper, and should be reversed.

■ Unless the letter operated as the notice, of failure of mediation required by § 5, the carrier was precluded by that statute from imposing the pay cut, and the order of the District Court authorizing the receiver to impose the cut was erroneous. If the Board by its letter meant to retain jurisdiction until adjudication of the dispute over the order of July 30, 1938, its retention of jurisdiction could not be passed upon by the receivership court. The power of the Board to "suspend" mediation and retain jurisdiction is no concern of ours, nor was it the concern of the district judge. So long as the Board pretended to retain jurisdiction, and so long as it refused to notify the parties that its efforts at mediation had failed, the carrier was without power to impose its wage reduction, and the receivership judge was without the power to order the carrier to do so. We are not impressed by the argument that so construed the Railway Labor Act is unconstitutional. Burke v. Morphy, supra. The Board may not have exceeded the proper discretion given it to exercise its statutory powers; if the Board did exceed its powers, its action could be corrected only by a writ of mandamus against it in the District of Columbia, where jurisdiction over it could be obtained. Compare Federal Communications Comm. v. Pottsville Broadcasting Co., 60 S.Ct. 437, 84 L. Ed. —, January 29, 1940; and compare also Brotherhood of Railroad Trainmen et al. v. National Mediation Board et al., 66 App.D.C. 375, 88 F.2d 757.

■ It seems clear to us that the Board's letter indicated its decision to retain jurisdiction. But certain passages are referred to as indicating that the Board had concluded its statutory duties. Even if the letter is susceptible of being so construed, its construction is not the province of the district judge. If the Board's letter was ambiguous, the ambiguity was one which could readily have been dissipated by the Board itself. If the receiver was puzzled by the meaning of the Board's letter, he could have requested the Board to make itself clear. Instead, he petitioned the receivership court for an immediate wage cut. The court should not have granted that petition until it was clearly shown that the Board had terminated its efforts.

■ We may add a further reason why the order should not stand. To sustain the order, the receiver must do more than prove that the letter failed to show a retention of jurisdiction, or that the letter was ambiguous. He must prove that the letter was an unequivocal notice that the Board had concluded its attempts at mediation. While we do not see how the letter can be so read, we would be reluctant to affirm the judge's order even so. The major obstacle to mediation was the previous order of July 30, 1938. We have held that order to be erroneous by our decision in Burke v. Morphy, supra. In so doing, we have removed the impediment that blocked mediation, and the way is now clear for the National Mediation Board to assist in settling the controversy over the proposed 15 per cent. wage reduction. Now that Burke v. Morphy has been decided, there is every reason to believe that mediation of the wage dispute will be successful. Though a receivership judge may have the duty of operating the railroad property in his custody, he is not thereby freed from the other responsibilities that devolve upon him as a federal court sitting

in equity. The announced policy of Congress is to encourage mediation of railway wage disputes wherever possible. Mediation of the present dispute is now possible. Therefore, the order appealed from should be set aside to permit both the receiver and the employees once more to invoke the services of the Board.

· The appeals of the intervening trustees present no issue of substance. They ask that the District Court be compelled to find as a fact a conclusion as to the meaning and effect of the Board's letter of April 7, 1939, which we are rejecting. The record was fully adequate to present the substantial question in issue. These appeals are therefore dismissed.

Order reversed.

### 3. Criminal law ⚖1166½(1)

In prosecution for conspiracy to operate illicit stills, where existence of some kind of conspiracy was proved beyond peradventure and only important issue was whether accused were connected with enterprise, permitting others of accused to plead guilty in presence of jury was harmless, particularly in view of charge that jury disregard the incident.

### 4. Intoxicating liquors ⚖249

A warrant must be specific enough in its description of place to be searched not to allow officers latitude to search at their choice, but all that is required is reasonable certainty of identification.

### 5. Intoxicating liquors ⚖249

A search warrant which described place to be searched as a "Dwelling house, No. 1166 Webster Avenue," was not fatally defective because not adding that dwelling was in Utica, N. Y.