Andrew C. L. LUM et al., Plaintiffs,

v.

CHINA AIRLINES CO., LTD., a Taiwan Corporation, et al., Defendants.

Civ. No. 75–0085.

United States District Court, D. Hawaii.

April 15, 1976.

Herbert Takakashi, James A. King, Bouslog & Symonds, Honolulu, Hawaii, for plaintiffs.

Hiroshi Oshiro, Daniel G. Heely, Chee, Hashimoto, Lee & Oshiro, Honolulu, Hawaii, for defendants.

## DECISION AND ORDER

Defendant's threshold argument is that this Court lacks subject-matter jurisdiction to review plaintiff's claim that the defendant, in his action of terminating the employment of the plaintiff, violated the plaintiff's rights as guaranteed under the Railway Labor Act § 2, Fourth. That section provides:

Fourth. Employees shall have the right to organize and bargain collectively through representatives of their own choosing. . . . No carrier, its officers, or agents shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice . . . .

Defendant argues that the Railway Labor Act vests exclusive jurisdiction in these matters with the National Mediation Board. This Court disagrees with defendant's contention.

In *Texas and New Orleans Railroad Co. v. Brotherhood of Clerks*, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034 (1930), the Supreme Court affirmed the power of federal district courts to take jurisdiction in order to enforce the rights of employees. In *Clerks*, the court held that it was proper for the district court to issue an injunction restraining the company from interfering with the employees' rights to organize and choose a bargaining representative. The employees in *Clerks* sought protection from employer interference under § 2, Third, the predecessor section to § 2, Fourth. *See* legislative history of § 2, Fourth, as described in *Brady v. Trans World Airlines, Inc.*, 223 F.Supp. 361, 365 (D.Del.1963), which similarly proscribed employer interference, influence or coercion with the selection of a bargaining representative by the employees.

The court in *Clerks* emphasized the importance of free choice in the selection of a representative and further stated that Congress must have intended to provide judicial protection of employees to exercise an uncoerced choice.

> Freedom of choice in the selection of representatives on each side of the dispute is the essential foundation of the statutory scheme. . . . [I]t is of the essence of a voluntary scheme, if it is to accomplish its purpose, that this liberty should be safeguarded. The definite prohibition which Congress inserted in the act can not therefore be overridden in the view that Congress intended it to be ignored. As the prohibition was appropriate to the aim of Congress, and is capable of enforcement, the conclusion must be that enforcement was contemplated. [281 U.S. 548, 569, 50 S.Ct. 427, 433, 74 L.Ed. 1034, 1045.]

In *Railway Employee's Co-op Association v. Atlanta B. & C. Railroad Co.*, 22 F.Supp. 510 (D.Ga.1938), the district court took jurisdiction in a similar situation and stated that the provisions of § 2, Fourth,

> . . . are not only safeguards of vital public interest, but also create a property right in the employees of great value, the interference with which may be enjoined by a court of equity. [22 F.Supp. at 513.]

Moreover, the court further stated:

> The protection to employees thus provided is a highly valuable property right and the obligation imposed upon the carrier by the act is an affirmative one that can be enforced by a court of equity by a mandatory injunction, if necessary. [22 F.Supp. at 514.]

In the more recent case of *Brady v. Trans World Airlines, Inc.*, 223 F.Supp. 361 (D.Del. 1963), the court reviewed the history of federal court jurisdiction of claims alleging a violation of § 2, Fourth. The court pointed out that enforcement of § 2, Fourth, was:

> . . . entrusted to the courts, for no other agencies, least of all the Adjustment Boards, are either equipped or empowered to deal with conduct impairing the statutory right of employees to be free of coercion in choosing bargaining representatives. [223 F.Supp. at 365.]

Defendant, however, cites to this Court *International Association of Machinists and Aerospace Workers, Local Lodge 2201 v. Air Indies Corp.*, Civ. 311–73 (D.P.R., Dec. 3, 1973), 86 LRRM 2076, in support of its argument that this Court lacks jurisdiction.

In *Air Indies*, the employer discharged several employees allegedly involved in an attempt to organize a union. A complaint was filed in district court seeking an injunction compelling reinstatement of the employees. Subsequent to the filing of the complaint, the National Mediation Board denied the union's application for an Investigation of Representation dispute, in effect denying the union its status as the certified bargaining representative.

Defendant employer moved for summary judgment on the injunction on the basis that the federal district court lacked subject

matter jurisdiction over what was essentially a § 2, Fourth, claim.

The district court granted defendant's motion for summary judgment on the basis that jurisdiction rested solely with the National Mediation Board.

Since 1934, the year the National Mediation Board was established, when federal courts have been presented with protests involving representation disputes under the Railway Labor Act, such actions have been uniformly dismissed on the ground that Congress has vested exclusive jurisdiction over such disputes in the National Mediation Board. [86 LRRM at 2077.]

The district court in *Air Indies* relied on three Supreme Court cases in support of its position: *Switchmen's Union v. National Mediation Board*, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943); *Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas Railroad Co.*, 320 U.S. 323, 64 S.Ct. 146, 88 L.Ed. 76 (1943); and *Andrews v. Louisville and Nashville Railroad Co.*, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1970). It is the conclusion of this Court that the court in *Air Indies* misapplied these cases in support of its conclusion that federal courts lack jurisdiction to enforce the protections of § 2, Fourth. Each of these cases is distinguishable and none disturb the holdings of *Brady* or *Clerks*.

In *Switchmen's Union v. National Mediation Board, supra*, the Court held that federal courts lack jurisdiction to review National Mediation Board decisions in § 2, Ninth, cases. However, § 2, Ninth, can be distinguished from § 2, Fourth, in that under § 2, Ninth, the statute expressly provides that it shall be the duty of the National Mediation Board to investigate and certify the designated and authorized representative of the employees. *Switchmen's Union* held that in § 2, Ninth, cases involving a dispute between two unions as to who has the right to represent the employees, the National Mediation Board has exclusive jurisdiction to certify the proper bargaining representative.

However, § 2, Fourth, has no such express language granting the National Mediation Board jurisdiction to protect the rights of employees who are organizing for the purpose of selecting a bargaining representative.

Similarly, in *Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas Railroad Co., supra*, decided the same day as *Switchmen's Union*, the Court ruled that the National Mediation Board has exclusive jurisdiction in jurisdictional disputes involving two unions who are asserting overlapping interests. Again, the Court relied on § 2, Ninth, as providing the statutory command that the National Mediation Board had jurisdiction. The Court, however, left no inference that it meant to restrict federal court jurisdiction in § 2, Fourth, cases. The court cited *Texas and New Orleans Railroad Co. v. Brotherhood of Railway Clerks*, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034 (1930), as establishing that rights guaranteed under § 2, Third (now § 2, Fourth), are enforceable in federal court. 281 U.S. at 548, 50 S.Ct. at 427, 74 L.Ed. at 1034.

Finally, the district court in *Air Indies* relied on *Andrews v. Louisville and Nashville Railroad Co., supra*. In *Andrews*, an employee who had been injured in an auto accident and was subsequently terminated by the employer alleged that his discharge was wrongful. The employee conceded that the collective bargaining agreement was the only source of his right not to be discharged. Thus, the dispute turned on the extent of the employer's obligation under the contract. The court held that since the source of petitioner's rights was the collective bargaining agreement, petitioner must follow the grievance and arbitration procedure explicated in the Railway Labor Act.

*Andrews* is clearly distinguishable both from the facts in the instant case and from those in *Air Indies*. There is no collective bargaining agreement in the case *sub judice* nor was there such an agreement in *Air Indies*. The source of plaintiff's claim in this case is the protective language of § 2,

Fourth, and not the collective bargaining agreement.

Thus, the *Air Indies* court incorrectly interpreted the scope of the *Andrews* holding when it stated:

> In the case at bar there is no indication either that the employees or the union have attempted to resolve this dispute by resorting to the statutory remedies provided in the Railway Labor Act and their exhaustion as required by the Supreme Court in decisions such as *Andrews v. Louisville and Nashville Railroad Co.,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95, 80 LRRM 2240 (1972), which held that a suit for wrongful discharge will not be entertained unless the administrative remedies provided in the Act are exhausted. [86 LRRM at 2078.]

Defendant's reliance on *Air Indies* is clearly erroneous.

Defendant's second contention is that Plaintiff Lum is not protected under the Railway Labor Act since his position has not been classified as that of an employee or subordinate official by the Interstate Commerce Commission. *See* 45 U.S.C. § 151, Fifth (as amended). Defendant argues that the Interstate Commerce Commission has exclusive jurisdiction to determine whether a person is an employee. Again, defendant's argument is without merit.

As plaintiff correctly points out in his brief, when the original Railway Labor Act was amended to cover employees of air carriers (which are under the regulation of the Civil Aeronautics Board and not the Interstate Commerce Commission; *see* 49 U.S.C. § 1240, et seq.), the amended Act included as protected employees those in the position of the plaintiff.

> All of the provisions of sections 151 to 152 and 154 to 163 of this title are extended to and shall cover every common carrier by air engaged in interstate or foreign commerce, and every carrier by air transporting mail for or under contract with the United States Government, and every air pilot or other person who performs any work as an employee or subordinate official of such carrier or carriers, subject to its or their continuing authority to supervise and direct the manner of rendition of his service. [45 U.S.C. § 181.]

■ Thus, although plaintiff may have some supervisory duties, he is still subject to the supervision of the manager and the assistant manager and must be considered as a person protected by the Act.

We come then to the findings of fact.

*Findings of Fact*

1. Plaintiff Andrew C. L. Lum, hereinafter referred to as "Lum," is a resident of the City and County of Honolulu, State of Hawaii, and is currently employed by China Airlines, Co., Ltd., hereinafter referred to as "China Airlines." Plaintiff Lum is an employee as defined in § 1, Fifth, of the Railway Labor Act, hereinafter referred to as the "Act," 45 U.S.C. § 151, Fifth.

2. Plaintiff International Association of Machinists and Aerospace Workers, AFL–CIO, hereinafter referred to as "IAM," is an unincorporated association organized for the purposes and objectives of a labor organization. Plaintiff Honolulu District Lodge 151, International Association of Machinists and Aerospace Workers, AFL–CIO, hereinafter referred to as "Lodge 151," is an affiliate of said IAM in the State of Hawaii and is likewise an unincorporated association organized for the purposes and objectives of a labor organization. IAM and Lodge 151 are "representatives" as defined in § 1, Sixth, of the Act, 45 U.S.C. § 151, Sixth, and have actively represented and collectively bargained for employees of "common carriers" as defined in § 21 of the Act, 45 U.S.C. § 181, for many years.

3. Defendant China Airlines is a foreign corporation organized under the laws of Taiwan, Republic of China, and engaged in the business of providing air transportation throughout the trans-Pacific world, including Hawaii and the mainland of the United States. China Airlines is a "common carrier" by air, and engaged in interstate or foreign commerce as defined in 45 U.S.C. § 181 of the Act.

4. During the period between January 1975 up through Lum's termination on March 12, 1975, Lum engaged in organizing for Lodge 151 at China Airlines. Some of Lum's more noticeable union activities were: questioning the airlines' policies and regulations on employees (transcript of Order to Show Cause hearings held on April 11, 1975 and April 14, 1975, hereinafter referred to as "Tr.," 190, Liu; partial transcript of the trial on the merits held on the 21st, 22nd, and 23rd of October, 1975, hereinafter referred to as "Pr.," 40–41 Won); holding discussions about unions and Lodge 151 with employees during coffee breaks and lunch on a daily basis (Pr. 38–39 Won; Pr. 134–135 Goo; Tr. 19–20 Lum); even holding such discussions in China Airlines agents' office (Pr. 39 Won); and Lum frequently associated with Amando Evangelista, another traffic agent at China Airlines (Pr. 40 Won), and both persons were identified as leaders in the union-organizing campaign for the IAM (Pr. 59 Won).

5. The timing of the discharge of Lum in relation to the union activities demonstrates a close relationship between union organizing and Lum's firing. The Court finds that China Airlines discharged Lum at least to some degree because of his union activities.

6. China Airlines had knowledge of the union activity taking place at its Honolulu office and of Lum's leading role in organizing a union there. The work force at China Airlines was small and the employees were in close and daily contact with the supervisory staff of China Airlines (Tr. 21–22, 38, 86 Lum). The station manager and assistant had actual knowledge of the union activities and of Lum's leading role in these activities (Tr. 21–23 Lum; Tr. 20–22, 30–35, 144–145 Tanaka; Tr. 99 Cecilia; Pr. 110 Goo).

7. China Airlines had condoned Lum's more severe record of tardiness in the past (see Def. Exhibit No. 8). Although Lum needed improvement in technical knowledge and punctuality, Lum was highly evaluated and his supervisors even recommended that he receive a salary equal to

that of an assistant manager (Tr. 28–29 Tanaka; Tr. 181–189 Liu; Exhibit Nos. 14, 19). Furthermore, just prior to the union-organizing campaign at China Airlines and Lum's discharge, Lum received a $48 a month increase in salary while other employees received only $10 to $40 increases (Tr. 11–13 Lum).

8. Tardiness and other reasons were given by China Airlines for discharging Lum. Tardiness rules were discriminatorily applied against Lum. (Tr. 20 Tanaka; Pr. 61 Won; Tr. 47–48 Liu). No employee has ever been discharged for tardiness in the history of China Airlines in Honolulu (Pr. 27–28 Wuh).

9. Lum was actively engaged in union-organizing activities and was discharged, in whole or in part, by China Airlines for such activities. The unlawful discharge of Lum violated his rights to join, organize and assist in organizing a union. *See Grede Foundries, Inc.*, 86 LRRM 1401 (June 18, 1974); *N. L. R. B. v. Elias Brothers Restaurants*, 496 F.2d 1165 (6th Cir. 1974); *see also N. L. R. B. v. Harry F. Berggren and Sons, Inc.*, 406 F.2d 239 (8th Cir. 1969). China Airlines interfered, coerced and sought to unlawfully influence Lum contrary to his lawful rights as provided in Act 45, U.S.C. § 152, Fourth.

IT IS HEREBY ORDERED that the defendants and each of them, and their agents, servants, employees and each and every person acting in concert with them who receive actual notice of the order by personal service retain or otherwise reinstate Plaintiff Andrew C. L. Lum in his former position and shift and at a rate of pay commensurate with his years of service and performance as he previously enjoyed without any loss of benefits, rights, and privileges including but not limited to sick leave, vacation, or other fringe benefits during the period March 12, 1975 to the date of this order.