## FORT SMITH & WESTERN RAILROAD COMPANY ET AL. *v.* MILLS, RECEIVER OF FORT SMITH & WESTERN RAILROAD COMPANY, ET AL.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF ARKANSAS.

No. 42. Argued December 13, 1917.—Decided June 1, 1920.

The Act of September 3, 5, 1916, known as the Adamson Law, although by its general terms purporting to apply to all railroads and railroad employees subject to the Act to Regulate Commerce, was not intended to govern the exceptional case of an insolvent railroad operating at a loss under an agreement with its men, which they desired to keep, allowing them less wages than the act prescribed. *Wilson* v. *New*, 243 U. S. 332, considered.

Reversed.

THE case is stated in the opinion.

*Mr. A. C. Dustin*, with whom *Mr. James B. McDonough* was on the brief, for appellants.

*Mr. Assistant Attorney General Frierson*, with whom *Mr. Alex. Koplin* and *Mr. S. Milton Simpson* were on the brief, for appellees.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill of equity brought by the Fort Smith and Western Railroad Company and the trustee of a mortgage given to secure bonds of that road, to enjoin the receiver of the road from conforming to the Act of September 3, 5, 1916, c. 436, 39 Stat. 721, in respect of hours of service and wages, and to enjoin the District Attorney of the United States from proceeding to enforce the act. The bill alleges

that the physical property is worth over $7,000,000, but that no dividends ever have been paid upon the stock, that no interest has been paid upon the bonds since October 1, 1907, and that there is a yearly deficit in the earnings of the road. The receiver was appointed in proceedings to foreclose the mortgage. The bill further alleges that the railroad now (1917) is being carried on under an agreement with the men which the men desire to keep, but that the receiver, yielding to the threats of the District Attorney to prosecute him unless he does so, purposes to substitute the much more onerous terms of the act. It is set up that the act if construed to apply to this case is void under the Fifth Amendment to the Constitution. The bill was dismissed by the District Court, on motion, for want of equity, and the plaintiffs appealed.

The act in question, known as the Adamson Law, was passed to meet the emergency created by the threat of a general railroad strike. It fixed eight hours as a day's work and provided that for some months, pending an investigation, the compensation of employees of railroads subject to the Act to Regulate Commerce should not be "reduced below the present standard day's wage," and that time in excess of eight hours should be paid for pro rata at the same rate. The time has expired long since but the rights of the parties require a decision of the case.

In *Wilson* v. *New*, 243 U. S. 332, it was decided that the act was within the constitutional power of Congress to regulate commerce among the States; that since, by virtue of the organic interdependence of different parts of the Union, not only comfort but life would be endangered on a large scale if interstate railroad traffic suddenly stopped, Congress could meet the danger of such a stoppage by legislation, and that, in view of the public interest, the mere fact that it required an expenditure to tide the country over the trouble would not of itself alone show a taking of property without due process of law. It was

held that these principles applied no less when the emergency was caused by the combined action of men than when it was due to a catastrophe of nature; and that the expenditure required was not necessarily unconstitutional because it took the form of requiring the railroads to pay more, as it might have required the men to take less, during the short time necessary for an investigation ordered by the law.

But the bill in *Wilson* v. *New* raised only the general objections to the act that were common to every railroad. In that case it was not necessary to consider to what extremes the law might be carried or what were its constitutional limits. It was not decided, for instance, that Congress could or did require a railroad to continue in business at a loss. See *Brooks-Scanlan Co.* v. *Railroad Commission of Louisiana,* 251 U. S. 396. It was not decided that there might not be circumstances to which the act could not be applied consistently with the Fifth Amendment, or that the act in spite of its universal language must be construed to reach literally every carrier by railroad subject to the Act to Regulate Commerce. It is true that the first section of the statute purports to apply to any such carrier, and the third to the compensation of railway employees subject to this act. But the statute avowedly was enacted in haste to meet an emergency, and the general language necessary to satisfy the demands of the men need not be taken to go further than the emergency required or to have been intended to make trouble rather than to allay it. We cannot suppose that it was meant to forbid work being done at a less price than the rates laid down, when both parties to the bargain wished to go on as before and when the circumstances of the road were so exceptional that the lower compensation accepted would not affect the market for labor upon other roads.

But that is the present case. An insolvent road had succeeded in making satisfactory terms with its men,

enabling it to go on, barely paying its way, if it did so, not without impairing even the mortgage security, not to speak of its capital. We must accept the allegations of the bill and must assume that the men were not merely negatively refraining from demands under the act but, presumably appreciating the situation, desired to keep on as they were. To break up such a bargain would be at least unjust and impolitic and not at all within the ends that the Adamson Law had in view. We think it reasonable to assume that the circumstances in which, and the purposes for which the law was passed import an exception in a case like this.

*Decree reversed.*

MR. JUSTICE DAY, MR. JUSTICE VAN DEVANTER, MR. JUSTICE PITNEY and MR. JUSTICE McREYNOLDS agree with this decision limiting the effect of the Adamson Law as stated, but adhere to the views concerning the constitutionality of the act expressed by them in *Wilson* v. *New.*