## BIRMINGHAM TRUST & SAVINGS CO. v. ATLANTA, B. & A. RY. CO.

(District Court, N. D. of Georgia.  March 26, 1921.)

No. 156.

1. **Master and servant ☞1—"Employment" defined.**

   Aside from statutory uses, "employment" means the existence of the relation of master and servant, consisting either in a binding contract for service, or in actual service without a definite contract.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Employment.]

2. **Specific performance ☞73—Contract for service not specifically enforceable.**

   The right of a person to refuse to serve, even though under a binding contract to do so, is part of the constitutional personal liberty of the land, and the failure or refusal to perform a contract of service may create a liability in damages, but no court will enforce the service.

3. **Injunction ☞101(1)—"Strike," to assert right or obtain economic advantage, is lawful.**

   A "strike," which is a concerted refusal to serve in an industry, either to assert a supposed right or to obtain an economic advantage, is lawful, if conducted for either purpose without violence or intimidation, though it may be a malicious tort if done for the sole purpose of injuring the employer, or an unlawful conspiracy if directed against interstate commerce, except as provided in Clayton Act Oct. 15, 1914.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Strike.]

4. **Master and servant ☞8(1)—Strike terminates employment.**

   A strike, even though lawful, terminates an employment, consisting either in a definite contract or an existing arrangement, even though the strike is a strategic move to force at last a better employment.

5. **Receivers ☞96—Strike, after illegal reduction in wages, forfeits right to former pay and hearing on future wages.**

   Where a railway receiver announced a wage reduction in pursuance of an order of court, which was invalid because made without hearing after 20 days' notice, as required by the Newlands Act (Comp. St. § 8674), the employees could either continue to serve and assert right to pay at the former wage, or they could treat the announcement as a breach of the relation and terminate the service. Where they struck when the reduction was announced, they forfeited their standing as employees, and are not entitled as a matter of right to be heard at the hearing to fix the future wages.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**6. Receivers ⬿96—Not directed to re-employ striking workmen in body.**

Where railway employees struck because of a reduction of their wages without hearing, contrary to the Newlands Act (Comp. St. §§ 8666–8676), and thereafter conducted their strike in a lawful manner, the receiver will not be directed by the court to re-employ the strikers in a body, where there is not sufficient business to justify the re-employment of all of them, and where substituted employees are rendering satisfactory service, but re-employment must be treated as an administrative detail, to be taken up with the receiver.

In Equity. Suit by the Birmingham Trust & Savings Company against the Atlanta, Birmingham & Atlantic Railway Company, in which a receiver was appointed for the defendant company. Hearing upon the question of wages and salaries to be paid by the receiver to the employees, at which N. H. Evans and others, for themselves and as representatives of certain labor unions, moved for a declaration of the status of striking employees at the hearing. Strikers held not to be employees entitled to be heard, and wages prescribed in preliminary order continued.

See, also, 271 Fed. 731.

The hearing upon the question of wages and salaries fixed by the order of March 3, 1921, came on before District Judges Clayton and Sibley on March 26, 1921. N. H. Evans, W. N. Martin, and others, for themselves and certain labor unions mentioned, moved in writing for a declaration of their status in the hearing, averring that they and those represented by them were employees of the Atlanta, Birmingham & Atlantic Railway Company at the time of the receivership, had left the service of the receiver on March 5, 1921, in a body, under circumstances and for reasons recited by them, and desired to re-enter the service, and, if permitted to do so in a body, they wished to participate in the wage hearing, but otherwise did not wish to participate. The court stated there appeared no reason why they should not be re-employed, so far as employment was open, and that that matter might be taken up with the receiver. In the question now before the court, they would be heard as parties interested, either singly or as a body; the court being desirous of all possible light upon the question to be decided. The movants insisted upon a decision of their status. After consultation the court made the decision hereafter set forth.

Reuben R. Arnold, of Atlanta, Ga., for complainant.
Brandon & Hynds, of Atlanta, Ga., for defendant.
Branch & Howard, of Atlanta, Ga., for employees.

Before CLAYTON and SIBLEY, District Judges.
BEVERLY D. EVANS, District Judge, unable to be present.

SIBLEY, District Judge (after stating the facts as above). [1, 2] Aside from statutory uses, employment means, in common-law language, the existence of the relation of master and servant. This may consist either in a binding contract for service or in actual service without a definite contract. One or the other is necessary. The right (with well-known exceptions) of one to refuse to serve, even though under a binding contract to do so, is a part of the constitutional personal liberty of the land. The failure or refusal to perform a contract of service may create a liability in damages, but no court will enforce the service.

---

⬿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[3] The right to refuse to serve may lawfully be asserted singly or in concert with others. A strike is a concerted refusal to serve in an industry, either to assert a supposed right or to obtain an economic advantage. For either purpose, if conducted without violence or intimidation, it is lawful, though if done, not in self-interest, but for the sole purpose of injuring the employer, it may be a malicious tort. Cases cited in dissent of Justice Brandeis in Duplex Printing Co. v. Deering et al. (decided January 3, 1921) 254 U. S. 443, 41 Sup. Ct. 172, 65 L. Ed. ——. If directed against interstate commerce, it may be an unlawful conspiracy, except as provided in Clayton Act Oct. 15, 1914, c. 323, 38 Stat. 730. Loewe v. Lawlor, 208 U. S. 274, 301, 28 Sup. Ct. 301, 52 L. Ed. 488, 13 Ann. Cas. 815; Duplex Printing Co. v. Deering, supra.

[4] A lawful strike, whether the employment consists in a definite contract or is merely an existing relation, involves generally an abandonment of the employment and a termination by the strikers of the employment so far as they are concerned. It may be a strategic move to force at last a better employment, but it definitely destroys the present one so far as the employees can destroy it. In this case the motion itself admits that there was a complete strike, a concerted refusal of all employees represented to do their customary work when summoned by the receiver. He accepted the situation and employed others to the number of 900, as many as he is at present able to pay. Evidently these, and not the old men, are now the employees.

[5] But it is said that as to the trainmen the receiver had improperly announced a reduction of pay, and this is true. But the rights of the trainmen, under the Newlands Act (Comp. St. §§ 8666–8676), may be analogized to those that would exist under a definite contract to serve for the 20 days involved, at the fixed wage. As in the case of a contract, the benefit of the act may be waived by the trainmen. Ft. Smith Railway Co., v. Mills, 253 U. S. 206, 40 Sup. Ct. 526, 64 L. Ed. 862. The wages here were not payable in advance of service, but were not due until about April 1st. The receiver's announcement was no more than an anticipatory breach of his duty to pay, like an anticipatory breach of a contract to pay, which gave the other party the choice of treating the relation as broken and abandoning it without incurring liability, or of denying the right to terminate it and performing or tendering the service and claiming the pay.

Both things may not be done. A contract could not be treated as broken and abandoned, and also treated as unbreakable and to be performed. To make a homely illustration, if A. hires B. for 20 days to work for $5 per day, payable after the work is done, and during the work A. announces he will pay only $4, B. may decline to work further for him, in view of this announced intention, and may even sue him for damages for the breach of the contract in addition to recovering full wages for the work done. But, if he would have wages for the future time, he must remain at work, unless A. actually prevents him from working, and B. must take the position that A. cannot refuse to pay him the correct wages. In this case, after the receiver announced his wage reduction, the trainmen, with the

others, conferred with him and insisted on the sole jurisdiction of the Labor Board, but made no mention of the Newlands Act; and as to the question discussed they were referred by the receiver to the provision in the court's order for a hearing at any time before the court. The men remained at work under protest. This was, as has been ruled, sufficient to reserve all rights, including those under the Newlands Act, and rebutted any inference of consent to the reduction.

The refusal to work further on March 5th, when summoned by the receiver, no matter what the reason or justification, terminated the employment. The invitation to present any contention to the court was extended by the original order of February 28th. A definite time for a hearing was set in advance of the next pay day on March 26th, without withdrawing the original invitation, which was open for any time. After the strike had commenced on March 5th, an order was made emphasizing the right to a hearing, and warning of this very complication, if the service should be abandoned.

[6] A strike, though a lawful and a valuable economic weapon, is not a substitute for orderly procedure in court, and cannot be allowed as a legal remedy for legal rights as against a receiver, without asserting that our courts cannot or will not do justice, which is to announce the failure of orderly government. Although the strike vote was taken January 28th, weeks before the receivership, and involved only a demand for a decision by the Labor Board, which it has held itself without authority to make, and although this only was agitated in the conference with the receiver, and as to this question the men have been held to be in the wrong, yet there was the aggravation of the oversight of the Newlands Act, and reason, perhaps, for misunderstanding about the hearing. The strike has been conducted without violence connected with the striking employees, and without personal bitterness between them and the receiver, and no reason appears why they should not be re-employed, so far as the receiver has employment for them. He testifies that he will be glad to give it to them. We do not, however, think it right to direct him to re-employ them in a body, not only because he has not now sufficient business, but also because it would not be right to discharge those who have taken some of the places and are proving acceptable and contented employees. Re-employment must be treated as an administrative detail, and to be taken up with the receiver.

2. After further hearing it was decided: Upon the question of the wages to be paid from this date, the standard set by the Labor Board is to be taken as presumptively correct, and to be disturbed only so far as the condition of the railroad demands. The evidence shows that the facts originally reported by the receiver are true, and that the deficit has been greater and the business more embarrassed in the period since January. The question now is whether the wage scale established on February 28th can be continued without destruction of the property. It is thought, however, that in view of the possibility of improving conditions, and because expenses are somewhat limited by reduced service, that the wage scale then established should be continued, if possible; and it will be so ordered.