MILLER v. BRANCH. (No. 8545.)

(Court of Civil Appeals of Texas. Dallas. June 18, 1921. · Rehearing Denied Oct. 15, 1921.)

1. ·Constitutional law ☜298(1) — Landlord and tenant ☜200(1½)—Statute providing penalty for collecting rent greater than authorized void as denying due process.

Rev. St. 1911, art. 5475, as amended in 1915 (Acts 34th Leg. c. 38, § 1 [Vernon's Ann. Civ. St. Supp. 1918, art. 5475]), providing that tenant may recover twice the rental advanced, if the rental exceeds one-third the value of the grain and one-fourth of the cotton crop, is void as violating the due process clauses in both the federal and state Constitutions (Const. U. S. Amend. 14, § 1; Const. Tex. art 1, § 19).

2. Courts ☜90(7)—If decisions of co-ordinate courts conflict on constitutional questions, the correct one will be followed.

Where the decision of the Court of Civil Appeal of another district conflicts with a decision of the court determining a constitutional question, the decision of the other court will not be followed, where not considered well founded.

Appeal from District Court, Collin County; F. E. Wilcox, Judge.

Action by T. F. Branch against A. M. Miller. Judgment for plaintiff, and defendant appeals. Reversed, and judgment rendered for appellant.

Smith & Abernathy, of McKinney, for appellant.

Truett &, Neathery, of McKinney, for appellee.

HAMILTON, J. This action was brought by appellee to recover a penalty of $2,000 against appellant under the provisions of an amendment to article 5475 of the Revised

Civil Statutes of Texas, the amendatory provision of the statute being that enacted by the Thirty-Fourth Legislature of Texas (Vernon's Ann. Civ. St. Supp. 1918, art. 5475).

Appellant rented to appellee a certain tract of agricultural land for the period of time between January 1, 1919, and December 31, 1919, and for it the appellee paid in advance as rental $1,000 in cash. He cultivated the farm in grain and cotton during the year 1919 under the contract, and $1,000 was more than the total value of one-third of the grain and one-fourth of the cotton produced on the land. Under these facts it was alleged by appellee that the rental contract was null and void and in contravention of the provisions of article 5475, and that in these circumstances he was entitled to recover from appellant $2,000, double the amount of rent paid, as a penalty under the provisions of said article of the statutes.

The appellee recovered judgment for the amount claimed, and appellant has appealed upon various grounds assigned, among which the statute which authorizes the recovery is assailed as being in contravention of the due process clause of the Constitution of Texas (article 1, § 19) and of section 1, article 14, of the Constitution of the United States.

[1] That the enactment is repugnant to both the state and federal Constitutions in the respects complained of by appellant is the opinion of this court, for which reason we sustain the views presented to us in behalf of appellant. At the present term of court in passing upon another case involving the same contentions, we have construed the provision of the statute here assailed, and in that case already have held it to be in conflict with the above-mentioned respective constitutional provisions. The case is styled Rumbo v. Winterrowd, and is reported in 228 S. W. page 258. There our views and the reasons sustaining them are fully expressed. They apply precisely to the case here presented. No reason for modifying or extending any part of that opinion occurs to us in connection with the instant case, and we therefore merely refer to the Rumbo Case, above cited, for a full expression of the conclusions of law upon which we dispose of this appeal.

[2] Appellee cites the case of Hawthorne v. Coates, 202 S. W. 804, as an authority expressly upholding the validity of the statute and conflicting with the decision of this court in the case of Rumbo v. Winterrowd. We do not believe the two decisions are necessarily in conflict. The court in that case specifically stated that the only point involved was that of a statutory lien, and held that the landlord's lien should only apply to a certain class of rental contracts. The reason for the holding was said by the court to be that a lien created by statute for the payment of a debt is but a part of the remedy

afforded by law for collection of the debt; that it acts upon the property and is no part of the obligation of a contract. In that case the court did not expressly pass upon the constitutionality of the law with reference to the question here presented; nor do we think that decision impliedly holds the act to be valid. But, if in any view, it must be said that a conflict exists between the two decisions in relation to the constitutionality of the law, believing, as we do, the decision in the Rumbo Case to be well founded and entirely correct, we could not abandon it to adopt the contrary opinion of a court of equal dignity and jurisdiction, notwithstanding the very great respect we entertain for the decisions of that able tribunal.

Appellee cites, as in conflict with the decision of this court in the Rumbo Case, the case of People v. La Fetra, 230 N. Y. 429, 130 N. E. 601, recently decided by the Court of Appeals of New York, and the case of Block v. Hirsh, 255 U. S. ——, 41 Sup. Ct. 458, 65 L. Ed. ——, also recently decided by the Supreme Court of the United States. The constitutionality of legislation to regulate housing conditions in New York City was upheld in the former case, and a law designed for the same purpose in Washington was held to be constitutional in the latter. In both instances there were vigorous dissenting opinions. We deem it unnecessary to discuss at length the holding of the majority in either case.

The grounds, however, upon which the validity of the enactments in those cases was declared are not present in the legislative act which our decision in the Rumbo Case nullifies. We perceive no analogy whatever between either of those decisions and that in the case of Rumbo v. Winterrowd. The legislative acts under consideration in both of those cases were designed to meet an emergency arising out of the disordered conditions and turmoil resulting from the World War to which the inhabitants of those cities had fallen victim. Both measures were born of a purpose, expressed in the legislative acts and recognized by the courts' decisions, to protect the public in a passing emergency in the nature of a public calamity for which the police power may always be invoked. The legislative acts passed upon in those cases were demanded to protect the health, the morals, and the general welfare of the public, which were ascertained to be threatened because of temporary abnormal conditions produced by world-wide warfare among all civilized peoples. The good of the whole public, in the situation dealt with, demanded suppression of the profiteer's greed as much as the public welfare demands suppression of the gambler's depredations at all times. An examination of this court's opinion in the Rumbo Case reveals no statement question-

ing the right and authority of the Legislature to bring into action the police power in such exigencies as those of which the legislative acts construed by the New York Court of Appeals and the Supreme Court took cognizance. But the situation and the conditions, to which the Texas statute construed by us in this case and the Rumbo Case applies, are wholly dissimilar to those passed upon in the cases cited. The act involved here arbitrarily imposed restrictions upon the classes to be affected in normal times, and as a permanent thing, destroying the right to contract with reference to a subject-matter unaffected by any public interest. In the Rumbo Case this court has said that—

"The law does not pertain to the health or moral condition of those engaged in farming as tenants. The contracts to which the law applies in no way involve a rule of the landlord placing the tenant under constraint in regard to how he shall labor. It cannot soundly rest upon the theory that ownership of lands is concentrated into a few persons' possession, who create a monopoly affecting the public welfare, and hence requiring control and regulation. The very opposite of this is known to be true, for the ownership of land is most widely disseminated, and it is a matter of common knowledge that the tendency prevails towards ownership of smaller tracts by individuals. In their private relations with each other all men in their dealings upon such subjects as the leasing and selling of land in normal times must be free of the kind of interference and restriction interposed by this act in what clearly appears to us to be arbitrary fashion."

To differentiate this case from the cases of People v. La Fetra and Block v. Hirsh it is necessary only to bear in mind that no abnormal situation prevailed calling for regulating contracts between rural landlords and tenants as was done by our Legislature, and that no pretense was made to repress a widespread evil arising out of an emergency and afflicting the entire public, impairing the public welfare; whereas, the other two acts were passed to relieve crucial afflictions, pressing down upon the public out of a grave abnormality, superinduced by unprecedented and almost universal warfare, more destructive and unsettling in its effect than any which had gone before in the history of mankind. And, as said, the legislative acts in both instances cited expressly recognized these conditions, and resorted to the police power as a temporary means of dealing with a temporary exigency, in its nature a present emergency demanding action for the public welfare. They were war measures.

In the case of Block v. Hirsh the Supreme Court used this language:

"No doubt it is true that a legislative declaration of facts that are material only as the ground for enacting a rule of law, for instance, that a certain use is a public one, may not be held conclusive by the courts. * * * But a declaration by a legislature concerning public conditions that by necessity and duty it must know is entitled at least to great respect. In this instance Congress stated a publicly notorious and almost world-wide fact. That the emergency declared by the statute did exist must be assumed, and the question is whether Congress was incompetent to meet it in the way in which it has been met by most of the civilized countries of the world."

Elsewhere the court used this significant expression:

"The regulation is put and justified only as a temporary measure. See Wilson v. New, 243 U. S. 332, 345, 346, 37 Sup. Ct. 298, 61 L. Ed. 755, L. R. A. 1917E, 938, Ann. Cas. 1918A, 1024; Ft. Smith & Western R. R. Co. v. Mills, 253 U. S. 206, 40 Sup. Ct. 526, 64 L. Ed. 862. A limit in time, to tide over a passing trouble, well may justify a law that could not be upheld as a permanent change."

In the course of the opinion also appears this expression:

"Congress has stated the unquestionable embarrassment of government and danger to the public health in the existing condition of things. The space in Washington is necessarily monopolized in comparatively few hands, and letting portions of it is as much a business as any other. Housing is a necessary of life. All the elements of a public interest justifying some degree of public control are present. The only matter that seems to us open to debate is whether the statute goes too far. For just as there comes a point at which the police power ceases and leaves only that of eminent domain, it may be conceded that regulations of the present sort pressed to a certain height might amount to a taking without due process of law."

Both the La Fetra and the Block decisions declare the statutes to be valid because pressing public necessity, universally recognized as growing out of the unusual and unprecedented conditions incident to war, demanded their enactment for the general welfare. The arbitrary quality by which the statute we construe is characterized, and also the quality of class legislation by which it is characterized, find no analogy in the acts construed in the La Fetra Case and the Block Case, and we do not think a reasonable construction of those decisions or of any other case can render our decision in the Rumbo Case in conflict with sound authority.

The judgment of the trial court is reversed, and judgment is here rendered for appellant.