**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**ERIE BASIN METAL PRODUCTS, Inc.,**
**Defendant-Appellant.**

**No. 11537.**

United States Court of Appeals
Seventh Circuit.

March 19, 1956.

James J. Lawrence, Ernest Greenberger, Chicago, Ill., for appellant.

Julian R. Wilheim, Atty., Dept. of Justice, Washington, D. C., Robert Tieken, U. S. Atty., Chicago, Ill., Warren E. Burger, Asst. Atty. Gen., Paul A. Sweeney, Attys., Dept. of Justice, Washington, D. C., Alexander O. Walter, John Peter Lulinski, Asst. U. S. Attys., Chicago, Ill., of counsel, for appellee.

Before DUFFY, Chief Judge, and MAJOR and FINNEGAN, Circuit Judges.

MAJOR, Circuit Judge.

This action was brought pursuant to the Renegotiation Act of 1943, as amended, Title 50 U.S.C.A.Appendix, § 1191 (hereinafter referred to as the Act), by the United States against defendant, Erie Basin Metal Products, Inc., to recover excessive profits, within the meaning of that Act, determined by the War Contracts Price Adjustment Board (hereinafter referred to as the Board), to have been received or accrued by defendant, under its contracts subject to renegotiation, for its fiscal year ending November 30, 1943. Defendant, an Illinois corporation, had contracts with numerous agencies of the government for the production of war materials. At the conclusion of the war such contracts were terminated and the Board determined that excessive profits received or accrued by the defendant during the year ending November 20, 1943 were in the amount of $1,270,000.00. On May 1, 1946, defendant was notified that no review of such order would be permitted.

As authorized by the Act, the government, on May 1, 1953, commenced the instant action against the defendant for the recovery of $1,270,000.00, together with interest thereon at the rate of 6% per annum from May 15, 1946. The complaint alleged that such liability "has not been reduced or eliminated by withholding or by any other means or method." Prior to trial of the instant matter, defendant was allowed a credit, pursuant to Sec. 3806 of the 1939 Internal Revenue Code, 26 U.S.C.A. § 3806, in the amount of $884,125.52, leaving excessive profits in the net principal amount of $385,874.48, which the government claimed was due and owing from defendant to the Treasury of the United States. The government also sought recovery of interest on said amount from May 16, 1946, at the rate of 6% per annum.

Defendant interposed a number of defenses, all of which at the time of the trial had been eliminated, other than that of payment. Relative thereto, the answer alleged:

"In or about November, 1946, the plaintiff acknowledged its indebtedness to the defendant on and for said termination claim to the extent of $384,873.74. The plaintiff withheld said amount admittedly due to the defendant and by public voucher accepted and applied said amount in satisfaction, liquidation and payment in full of the balance allegedly due by the defendant to the plaintiff under the aforesaid unilateral excess profits determination."

In view of the conclusion which we have reached as to the proper disposal of this appeal, we find it unnecessary to make a detailed statement of the facts and circumstances which give rise to defendant's payment defense. Briefly, in the year 1945, and prior to the entry of the Board's unilateral determination and order upon which the government relies, defendant submitted to it a contract termination claim in connection with one of its terminated war contracts. This claim, purporting to be in conformity with the Contract Settlement Act of 1944, Title 41 U.S.C.A. § 101 et seq., and regulations promulgated thereunder, was based upon a contract referred to by the parties as No. 569. We need not now be concerned with the controversy concerning the alleged payment of this claim. It is sufficient to note that it was apparently allowed in the amount of $384,873.74, and that defendant was given credit for such amount upon its renegotiated liability, with the result that it owed the government nothing. It was this asserted payment for which defendant contended that it was entitled to credit which constituted the issue for trial in the District Court. The government contended that action taken by certain of its officials with reference to this claim was a mistake or without authority and, therefore, not binding on the government. It is plain that this was the sole issue, inasmuch as the defendant under the Act could not in the instant case attack the amount or validity

of the renegotiated liability as asserted by the government.

Long before the commencement of the present action and on July 29, 1946, defendant, as permitted by the Act, filed a petition in the Tax Court of the United States for a *de novo* redetermination of its excess profits for the fiscal year in question, to which the government responded by joining issue on February 6, 1947. That case, while at issue, had not been tried by the court at the time of the hearing below. By the terms of the Act, the Tax Court is given sole jurisdiction to entertain an attack upon the amount or validity of the renegotiated liability and its determination is made final.

On August 13, 1951, defendant commenced an action in the Court of Claims to recover from the government, among other things, on account of its termination claim under Contract No. 569, which plaintiff (defendant here) alleged "was settled by agreement reached on June 4, 1946, through negotiation between plaintiff and the Contracting Officer and their representatives." In response to this allegation the government in its answer admitted that negotiations regarding plaintiff's (defendant's here) termination claim had been had with tentative arrangements for its settlement but denied that any agreement was reached as to the final amount due thereon. The government also filed a counterclaim in that proceeding predicated upon the same cause of action which it asserts in the instant proceeding in that it sought recovery upon plaintiff's (defendant's here) renegotiated liability. In defense of such counterclaim plaintiff (defendant here) alleged that such liability "was duly paid, satisfied and discharged by payment in full out of sums owing to the plaintiff by the defendant."

■ Section 1191(c) (2) of the Act expressly confers jurisdiction upon courts of the United States to entertain an action by the government "to recover from the contractor any amount of such excessive profits actually paid to

him and not withheld or eliminated by some other method." Whether the court had jurisdiction to entertain the defense of payment as pleaded by the defendant is not so plain and we find no case in point. See, however, United States v. Raymond De-Icer Corp., D.C., 96 F.Supp. 14, and United States v. American Textile Machine Corp., D.C., 119 F.Supp. 253. Both parties insist, however, that the court had such jurisdiction. The government in its brief states:

"Although the Renegotiation Act sharply circumscribes the District Court's jurisdiction in a renegotiation collection action brought under Section 403(c) (2) of the Act, there is no doubt that the court has jurisdiction, as it has in any other action on a debt, to entertain the affirmative defense of payment."

There is nothing in the Act which either expressly confers or denies jurisdiction, and it is our view that under general principles of law the court had such jurisdiction.

The court, on July 7, 1955, immediately after conclusion of the hearing, entered judgment in favor of plaintiff in the sum of $385,317.76, together with costs, and awarded plaintiff execution therefor. However, it specifically reserved decision on the issue of interest until final decision is rendered in the pending Court of Claims suit. From this judgment defendant appeals.

The principal issue on this appeal is whether the District Court decided the issue of payment relied upon by defendant. Defendant contends that no decision was made on that issue and for that reason the judgment must be reversed or, in the alternative, that the payment issue must be decided by this court. The government on the other hand insists that the issue was decided adversely to defendant. The government makes no contention that the judgment can stand in the absence of a decision by the District Court on the issue of payment.

The court in its finding of fact No. 6 stated:

" * * * that the issue of whether payment was made or due as pleaded in defendant's Amended Answer in this case now is pending in the United States Court of Claims in 'Erie Basin Metal Products, Inc., Plaintiff, v. The United States, Defendant', being Docket No. 50271 in that Court, and that this Court is without jurisdiction to determine such issue and, therefore, does not hereby determine such issue."

Also, the court after announcing its decision stated in response to an inquiry by counsel for defendant:

"I am not going to say there was not payment because I am not satisfied yet from the record—it is entirely possible in any institution as big as the Government that one department might have received a payment some way or other and it might not be reflected. I am not going to find there has not been payment at the present time * *."

And the court, regarding its finding No. 6, stated:

"And the court has entered and made paragraph 6 as it is primarily to make it clear that as a matter of comity of courts this court wants the Court of Claims to understand clearly that this court does not propose in any way to enter any order that might lead the Court of Claims to believe that this court had considered whether or not there was a claim of the defendant against the United States Government. This court does not wish to express any opinion on the matter whatsoever."

Furthermore, it is evident that government's counsel understood that no finding had been made relative to the defense of payment. In objecting to finding No. 6, counsel among other things stated:

" * * * that the defendant has failed to submit and introduce in evidence any proof of payment but has utterly failed to sustain its burden of proof, and therefore on this record there should be and must be a finding of fact of no payment."

This objection was overruled by the court.

We see no escape from the conclusion that the court made no decision on the affirmative defense of payment. Whether this was because the court thought it was without jurisdiction or that the issue should first be determined by the Court of Claims is not clear. Defendant was entitled to a decision on that issue and failure of the court to do so was, in our judgment, reversible error. It may be, as defendant suggests, that this court has the authority to make such a decision but we think it should first be made by the District Court, particularly in view of the fact that the same or similar issues are involved before the Tax Court and the Court of Claims, in actions which long antedate the present action.

In reversing the judgment, we realize the perplexing problem inherent in the situation. At one point the District Court expressed the view, which seems to us plausible, that there should be no decision in the instant case pending a decision by the Court of Claims which first acquired jurisdiction. As already noted, the government undoubtedly had a right to institute the action but we know of no command that the case be tried and decided by the District Court when the same or similar issues are pending in other courts, a decision of which may be determinative of the rights of the parties. Judicial manpower is not so plentiful that three courts should be giving their time and attention to as many different cases which involve the same parties and the same or similar issues. Particularly is that so where, as here, the government delayed commencement of its action for more than seven years after it arose.

The judgment is reversed and the cause remanded, with directions that the judgment be vacated, without prejudice to the right of the District Court to de-

cide the affirmative defense of payment or to continue the case pending a decision by the Court of Claims.

FINNEGAN, Circuit Judge.
I concur in the result.