**ERIE BASIN METAL PRODUCTS, Inc.,**
a corporation, Petitioner,

v.

**Honorable William J. CAMPBELL, United States District Judge for the Northern District of Illinois, Eastern Division, Respondent.**

**No. 12134.**

United States Court of Appeals
Seventh Circuit.

Feb. 17, 1958.

Harold Stickler, Chicago, Ill., for petitioner.

Robert Tieken, U. S. Atty., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., Julian R. Wilheim, Dept. of Justice, Washington, D. C., for respondent.

Before DUFFY, Chief Judge, and MAJOR and FINNEGAN, Circuit Judges.

MAJOR, Circuit Judge.

We have before us a petition praying that a writ of mandamus or prohibition issue to the Honorable William J. Campbell, a Judge of the United States District Court for the Northern District of Illinois, Eastern Division, directing that an order be entered removing Cause No. 54–C–1920 from the list of cases awaiting trial and deferring trial until the Tax Court of the United States and the

United States Court of Claims have each finally disposed of cases involving the same or similar subject matter.

The United States instituted two actions against petitioner, Erie Basin Metal Products, Inc., a corporation (hereafter "Erie"), pursuant to the Renegotiation Act of 1943 as amended, Title 50 U.S.C.A.Appendix, § 1191 (hereafter the "Act"), to recover excessive profits, within the meaning of that Act, determined by the War Contracts Price Adjustment Board to have been received or accrued by Erie under its contracts subject to renegotiation, for its fiscal years 1943 and 1944. The action to recover excessive profits for 1943 has on appeal by Erie twice been decided by this Court in its favor. United States v. Erie Basin Metal Products, Inc., 7 Cir., 231 F.2d 294; United States v. Erie Basin Metal Products, Inc., 7 Cir., 244 F.2d 809.

The action out of which the instant controversy arises was to recover excessive profits for the year 1944. Section 1191(c) (2) provides:

"Actions on behalf of the United States may be brought in the appropriate courts of the United States to recover from the contractor any amount of such excessive profits actually paid to him and not withheld or eliminated by some other method under this subsection."

Section 1191(e) (1) provides:

"Upon such filing [of a petition for redetermination with the Tax Court] such court shall have exclusive jurisdiction, by order, to finally determine the amount, if any, of such excessive profits received or accrued by the contractor or subcontractor, and such determination shall not be reviewed or determined by any court or agency. * * * The filing of a petition under this subsection shall not operate to stay the execution of the order of the Board under subsection (c) (2)."

The amount of excess profits due from a war contractor is determined in a unilateral proceeding by the Board and the defenses available to a defendant in an action by the government to recover such profits is narrowly limited. United States v. Edward Valves, Inc., 7 Cir., 207 F.2d 329.

Erie within the time prescribed by statute filed with the Tax Court of the United States a petition for redetermination of the amount of its excess profits, if any, which action is now pending. Obviously, this proceeding encompasses all disputes between the government and Erie relative to excess profits, including those sought to be recovered in the pending action. Erie also filed in the United States Court of Claims a suit against the government in which it sought recovery of what is characterized as termination claims. We need not detail the proceedings which have taken place in that Court but, as we understand, the issues as finally made include that of Erie's liability asserted as a basis for recovery in the pending action. This proceeding in the Court of Claims is likewise pending.

Erie, so it is alleged, has been inactive since shortly after the end of World War II, and its only substantial assets consist of money due from the United States on war contract termination claims and settlements of approximately more than one million dollars. Erie points out that it cannot in the pending action obtain a hearing and decision on the merits of the claim sought to be maintained against it by the government. This results from the limitations inherent in the statute on the right of a war contractor to defend on the merits. On the other hand, it is contended with plausibility that the Tax Court has jurisdiction and is charged with the responsibility of deciding on the merits all issues between the parties, including the unilateral determination of defendant's liability for which recovery is sought in the action now pending in the District Court. Moreover, a decision of the Tax Court will be final and binding on all parties. There is some dispute, which we need not resolve, relative to the issues in the case before the Court of Claims but it appears that the validity of the unilateral determination upon which the suit now pend-

ing is predicated is also in issue before that Court.

On April 26, 1957, Erie filed a sworn motion before Judge Campbell requesting that the cause now pending be removed from the trial call and that a trial and decision be deferred until final disposition of the renegotiation case pending in the Tax Court and the termination claims case pending in the Court of Claims. A brief was filed in support of this motion and oral argument was heard by respondent. Respondent by order denied the motion and directed that the case proceed to trial. It is of this order that petitioner complains, with a prayer that this Court issue its directions to respondent to defer trial of the action as requested until the cases before the Tax Court and the Court of Claims have been decided.

Erie contends that by reason of the Court's limited jurisdiction it will be deprived of its constitutional and statutory rights unless trial is deferred until after final disposition of the cases now pending in the Tax Court and the Court of Claims. This contention is based upon the following allegations of the petition:

"If the United States obtains a substantial judgment, as sought by it in said cause No. 54 C 1920, and attempts to collect said judgment, which is the sole purpose and object of the action, it will bring about a public sale, in the form of an execution sale, of petitioner's interest in the termination claims against the United States, since these claims constitute the only substantial assets of petitioner available to satisfy such judgment. Very little would be offered for such claims which are so strongly opposed, with the result that petitioner will be stripped of ownership of said claims without any benefit except a small amount of credit against the judgment procured by the United States, and without having had the opportunity to establish the merits by adjudication in the Court of Claims and obtain the benefits of the real value of said claims.

"Left without funds or assets after such execution sale, petitioner would be unable to pay the fees, charges, and expenses of further litigation in the Tax Court and the Court of Claims. Moreover, with any part of its judgment left unsatisfied, the United States could procure the appointment of a receiver who would have charge of petitioner's litigation but, lacking funds, could not be expected to continue such litigation. As a result, the United States, by procuring said judgment, would be in a position to stifle any judicial investigation and determination of the merits of the very renegotiation claim on which the judgment would be founded, as well as the merits of the tax claims, and other claims of the United States presently being challenged by the petitioner in the Tax Court and Court of Claims."

Erie argues that under these special circumstances the Renegotiation Act would operate to deprive petitioner of its property interest and statutory rights without due process of law, contrary to the Fifth Amendment, by making it possible for the United States to obtain and collect a judgment without an adjudication on the merits of the claim, thus enabling the government "to squeeze petitioner out of ownership of the termination claims" and leave it without funds or assets with which to litigate the merits of the government's claims in pending cases, including those asserted in the pending case.

Erie concedes the constitutionality of the Renegotiation Act but argues that under the particular circumstances it may be applied by the government so as to deprive petitioner of its property in an unconstitutional manner. Cases are cited which recognize the principle that a constitutional enactment may be employed so as to produce an unconstitutional result. Ft. Smith & W. R. Co. v. Mills, 253 U.S. 206, 208, 40 S.Ct. 526, 64 L.Ed. 862; St. Louis, I. M. & S. Ry. Co. v. Wynne, 224 U.S. 354, 32 S.Ct. 493, 56

**366**

L.Ed. 799, and United States v. C. I. O., 335 U.S. 106, 123, 68 S.Ct. 1349, 92 L.Ed. 1849. We agree that the principle for which these cases stand might be applicable if the government were threatening or attempting to satisfy a judgment in a manner that would impair Erie's right to a trial of the cases pending in the Tax Court and the Court of Claims.

It is evident, however, that the allegations of the petition do not encompass a situation so dire in its consequences. The petition does not allege that the government has threatened or that it will, in the event it obtains a judgment, proceed with its collection in the asserted unconstitutional manner. The most that can be said of the allegations is that the government, after judgment, is possessed of the power to proceed in the alleged unconstitutional manner and that petitioner is fearful that it might do so. Whether this fear is well founded is a matter of conjecture and speculation. It is hardly conceivable that the government would attempt to proceed in the collection of a judgment in the manner at present envisioned by Erie; in fact, this Court was assured by government counsel during oral argument that it had no intention of so doing. Moreover, if it should threaten or attempt to do so, we have no doubt but that the courts have adequate power to protect Erie from an invasion of its constitutional rights. As stated by Judge Campbell in his answer to the rule to show cause, "In any event, if any such untoward action should be taken by the Government, which this respondent does not believe on the present state of the record, then appropriate relief may be given either by this respondent, by the Court below, or by this Court."

It follows from what we have said that petitioner was not entitled as a matter of law or right to a deferment of the trial of the case. It was a matter within the sound discretion of the District Court and we cannot say that there was a clear abuse of such discretion, even though it might properly have been exercised differently.

Assuming that we have the power to issue the writ requested, which we need not decide, we are of the view that it is not an appropriate case for its exercise. The rule to show cause is discharged and the petition dismissed.

FINNEGAN, Circuit Judge (concurring).

An "Answering Affidavit," made by the government attorney handling this case under his assignment to the Frauds Section, Civil Division, U.S. Department of Justice, unmentioned by Judge MAJOR, buttresses his opinion. I point this up when joining with my brothers.