Maggie THOMAS et al.,
Plaintiffs-Appellees,

v.

STATE OF LOUISIANA,
Defendant-Appellant.

No. 75–1801.

United States Court of Appeals,
Fifth Circuit.

July 1, 1976.

Rehearing Denied Aug. 5, 1976.

Frank Trosclair, Jr., Asst. Atty. Gen., Baton Rouge, La., for the State of La.

Robert B. Neblett, Jr., Daniel E. Broussard, Jr., Alexandria, La., for plaintiffs-appellees.

Before DYER, CLARK and GEE, Circuit Judges.

GEE, Circuit Judge:

The State of Louisiana challenges the lower court's order setting aside its settlement agreement with 1,941 state employees in compromise of a claim for unpaid overtime compensation. Finding the agreement valid and binding, we reverse.

Appellees, employees of various state agencies who had sued their employer under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* (1970),[1] for unpaid overtime compensation, won a verdict in 1972 for three years of overtime pay, liquidated damages, and attorneys' fees. But before final judgment was entered, the Supreme Court in *Employees of the Department of Public Health & Welfare v. Department of Public Health & Welfare*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973), held that because section 16(b) of the FLSA, 29 U.S.C. § 216(b) (1970), was silent on whether a state could be sued for recovery under the Act by its own employees, Congress would not be deemed to have caused a state to forfeit its eleventh amendment sovereign immunity to suit[2] by citizens of its own state. At this point, our appellees had claims of no value.[3] In early 1974, the two parties agreed to a settlement by which the state agreed to pay each appellee overtime compensation for two years, but no liquidated damages, attorneys' fees, or costs. Shortly thereafter, in April 1974, Congress amended section 16(b) of the FLSA to overturn the Supreme Court decision and authorize such suits.[4]

Appellees persuaded the lower court to void the settlement agreement on the authority of *Schulte v. Gangi*, 328 U.S. 108, 66 S.Ct. 925, 90 L.Ed. 1114 (1946), which held that the remedy of liquidated damages under the FLSA cannot be bargained away by an agreement between employer and employee in settlement of a bona fide dispute over whether the employer was subject to the FLSA. Basing its decision on the danger that one-sided bargaining might frustrate the congressional purpose of insuring minimum wage payments,[5] the *Schulte* Court noted, *id.* at 113 n.8, 66 S.Ct. 925, that it might countenance an exception for stipulated judgments, subject as they are to judicial scrutiny. Several courts, including this circuit, subsequently elevated the *Schulte* dictum to law.[6]

1.  Section 16(b) of the FLSA read at the time:
    Any employer who violates the provisions of section 206 [prescribing a minimum wage] or section 207 [prescribing maximum hours and overtime rates (section (h))] of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. . . .
    The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.
    29 U.S.C. § 216(b) (1970).

2.  The *Court in Parden v. Terminal Ry.*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), had held that while a state is immune from suit by an individual unless it consents, Congress can condition the state's decision to engage in some activity within Congress' power to regulate commerce on a waiver of immunity. The *Employees* Court recognized that while *Parden* involved a railroad business that the state there operated for profit, Congress could regulate working conditions of employees in state institutions not conducted for profit if it determined that those employees "have such a relation to interstate commerce that national policy, of which Congress is the keeper, indicates that their status should be raised." 411 U.S. at 284, 93 S.Ct. at 1618.

3.  While the Secretary of Labor could have sued in their behalf, *see* text accompanying note 7 *infra*, he had not chosen to do so.

4.  The second sentence of section 16(b) was amended to read as follows:
    Action to recover such liability may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.
    29 U.S.C.A. § 216(b) (Supp.1976).

5.  *See also Brooklyn Sav. Bank v. O'Neal*, 324 U.S. 697, 706–07, 65 S.Ct. 895, 89 L.Ed. 1296 (1944).

6.  See *Urbino v. Puerto Rico Ry. L & P Co.*, 164 F.2d 12 (1st Cir. 1947); *Jarrard v. Southeastern Shipbuilding Corp.*, 163 F.2d 960 (5th Cir. 1947); *Bracey v. Luray*, 161 F.2d 128 (4th Cir.), *cert. denied*, 332 U.S. 790, 68 S.Ct. 98, 92 L.Ed. 372 (1947); *cf. Satterwhite v. United Parcel Serv., Inc.*, 496 F.2d 448 (10th Cir.), *cert. denied*, 419 U.S. 1079, 95 S.Ct. 668, 42 L.Ed.2d 674 (1974) (employees cannot challenge denial of liquidated damages for claim submitted to binding arbitration).

Although no court ever approved this settlement agreement, the same reason for enforcing a court-approved agreement—i. e., little danger of employees being disadvantaged by unequal bargaining power— applies here. Initially, appellees had three alternatives to filing suit in federal court. First, they could have requested the Secretary of Labor to exercise his discretionary power under 29 U.S.C. § 216(c) (1970) to intervene and prosecute the action in their behalf in a federal proceeding, but they would thereby have waived their claim to liquidated damages and attorneys' fees.[7] Second, they could have sued in state court. Finally, they could have attempted to negotiate an out-of-court settlement. After *Employees*, only the last option remained, and appellees wisely pursued it. Appellants, equally wisely, were amenable.

■ Settlement agreements have always been a favored means of resolving disputes.[8] When fairly arrived at and properly entered into, they are generally viewed as binding, final, and as conclusive of rights as a judgment.[9] We see no reason here to depart from the general rule. There is no problem of disproportionate bargaining power when a settlement gives employees everything to which they are entitled under the FLSA at the time the agreement is reached. Thus, the agreement is enforcible, and the lower court erred in setting it aside.

REVERSED.

CLARK, Circuit Judge (specially concurring):

Today's decision is necessarily narrow. I concur because it cannot be construed to approve nonjudicial settlements of wage and hour claims in situations removed from the unique facts of this case. As Judge Gee demonstrates, these plaintiffs entered into a fair compromise agreement at a time when no viable forum existed to enforce their rights. Each side was correctly apprised of the law as it then existed and intelligently assessed the impact of the Supreme Court opinion. The short-lived *Employees* decision had the effect of rendering the district court's award a nullity, because it enucleated the court's jurisdiction. The 1974 amendments, though designed to legislatively overrule *Employees*, did not address the specific question of the validity of compromise made during this jurisdictional gap. In this limited sphere, *Schulte* is not controlling since it only outlaws nonjudicial agreements executed to terminate bona fide disputes as to coverage and leaves open the possibility of settling other legal controversies out of court.

The singular posture of this case is unlikely to reoccur. By amending the Portal-to-Portal Act to toll the statute of limitations, Congress insured that public employees who were ousted from federal courts on jurisdictional grounds during the *Employees* era are given a second chance to enforce their rights in that forum. 29 U.S.C. § 255(d) (1974). I deem this concurrence necessary to emphasize that *Schulte* continues to raise a barrier to even fair bargaining between employee and employer where there is a dispute as to existing law.

It also seems apropos to specify the limited significance of the Eleventh Amendment issue presented. *Employees* did necessarily imply that citizen employees of a state hospital were not barred from federal court to assert wage and hour claims against their state employer. However, the subsequent 1974 amendments to FLSA purported to confer the right to sue in a federal forum on all nonsupervisory state employees. The constitutional right of Congress to regulate commerce must coexist with the bar of the Eleventh Amendment. *Employees* did not undertake to balance the interests of the Eleventh Amendment and the Commerce Clause in the context of the issues and

7. While retaining the right to recover for three (rather than two) years of compensation if they could prove, as the lower court found here, that the violations were willful. See *Brennan v. Heard*, 491 F.2d 1, 2–3 (5th Cir. 1974).

8. See, e. g., *Williams v. First Nat'l Bank*, 216 U.S. 582, 595, 30 S.Ct. 441, 54 L.Ed. 625 (1910).

9. See, e. g., *Cia Anon Venezolana De Navigacion v. Harris*, 374 F.2d 33, 35 (5th Cir. 1967).

interests there present. This would be necessary if the suing citizen employee were engaged by a state institution which was essential to the conduct of state government, *e. g.*, police protection or tax collection. In the comparable *Twenty-first Amendment vs. Commerce Clause* situation, the Court set this standard:

> Both the Twenty-first Amendment and the Commerce Clause are parts of the same Constitution. Like other provisions of the Constitution, each must be considered in the light of the other, and in the context of the issues and interests at stake in any concrete case.

*Hostetter v. Idelwild Bon Voyage Liquor Corp.*, 377 U.S. 324, 332, 84 S.Ct. 1293, 1298, 12 L.Ed.2d 350 (1964).

Clearly, this would be the test where *Parden's* waiver theory should not apply. Such a case is not theoretical. *See National League of Cities v. Dunlop* (3-judge court) *prob. jurisd. noted*, 420 U.S. 906, 95 S.Ct. 823, 42 L.Ed.2d 835, 43 U.S.L.W. (1975). We do not face it here.